# CHARLESTON.

W. R. BENNETT v. CHESAPEAKE & POTOMAC TELEPHONE CO.

(No. 5695)

Submitted October 12, 1926.    Decided October 19, 1926.

TRESPASS—*Burden of Proof Rests on Plaintiff, Complaining of Trespass on Land, Adjoining Highway, Though Defense is That Acts Were Within Limits of Highway (Acts Va. 1836-37, c. 160; Acts W. Va. 1909, c. 52, § 2; 2 Rev. Code Va. 1819, c. 234, § 14).*

In a suit for trespass upon plaintiff's land abounding on a public highway, and the defense is that the acts complained of were wholly within the limits of the highway, the burden does not shift to defendant to show that the acts were not committed on plaintiff's lands. The burden still rests upon plaintiff to make out his case by the preponderance of evidence.

(Trespass, 38 Cyc. p. 1104.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Error to Circuit Court, Fayette County.

Trespass by W. R. Bennett against the Chesapeake & Potomac Telephone Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*W. R. Bennett* and *A. J. Horan,* for plaintiff in error.

*MacCorkle, Clark & MacCorkle* and *Osenton & Lee,* for defendant in error.

LIVELY, JUDGE:

The solution of this controversy involves the location and width of the Giles, Fayette and Kanawha Turnpike, a former toll road leading from Giles courthouse in Virginia to the Kanawha salt works in Kanawha County, this state, located, constructed and at one time operated by the Giles, Fayette and Kanawha Turnpike Company under a charter from the general assembly of Virginia, issued to it in 1837.

Plaintiff's land abuts on this old highway. Between the traveled portion of the highway and a fence of plaintiff running parallel to it, were growing some small oaks, varying in diameter from six to fourteen inches, a hickory of ten inches, and a service ("sarvis") of seven inches in diameter. Defendant cut and removed these trees, and constructed its telephone line in the space between the fence and the traveled road and within approximately fifteen feet of the center of the paved portion of the highway when surfaced. It had a franchise from the county court to erect its lines along and upon the road, and had done so. The county court was about to improve the road by hard-surfacing it, and notified the telephone company to remove its line farther from the road. It did so, but first informed the road engineer that it could not do so without having the trees removed. The engineer said they would have to be removed by the county authorities later, and told the telephone company to remove them under his direction, and sent an assistant along to direct the work. Plaintiff sued for the value of these trees and for damage to his fence and field incidental to their removal. The telephone company defended on the ground that the trees were on the turnpike right of way, and on the ground that the county court was responsible because its employees acted under the orders of the county authorities; and denied that any damage was done to plaintiff's fence or field in the cutting and removing of the trees. The jury after hearing the evidence and viewing the premises, returned a verdict for defendant; and plaintiff complains of a refusal to set aside the verdict, principally because, it is contended, the evidence shows a right of

recovery for some amount at least, and the court should so have instructed the jury, leaving the amount to be determined by it.

Plaintiff assumed that the center of the traveled portion of the turnpike was the center of the road and that the turnpike was thirty feet wide; and measuring from the center of the traveled way fifteen feet, he found that many of these sixteen small trees were standing beyond the fifteen feet and were therefore on his land and owned by him, and over which neither the defendant nor the county had any control. He based his assumption of the width of the road at thirty feet upon an order of the county court fixing all county roads at thirty feet in width, the contents of which order he attempted to state from memory. The court very properly struck out that part of his testimony, holding that the order, if any there was, was the best evidence. No such order was produced.

Counsel for plaintiff says that by virtue of the statute, the county roads at the time of the trespass were thirty feet wide. The statute in force at that time says, "* * * * All public roads which are now established in any of the counties of this state as public roads shall occupy a right of way *not less* than thirty feet wide, unless the county court shall have made a special order for a different width, which order must be a matter of record in the office of the county clerk." Sec. 2, Chap. 52, Acts 1909.

Plaintiff does not claim any rights within the right of way. But plaintiff says these trees were without the right of way. Defendant's witness McGrath, county engineer, says, "No timber or brush was cut except within the right of way of the county or state road known as the Giles, Fayette & Kanawha Turnpike." Plaintiff says it was error to allow such statement to go to the jury, because the engineer had no evidence on which to base his opinion. The same objection could be made to plaintiff's evidence that the trees were without the right of way, for his evidence is based on the assumption that the center of the traveled way was the center of the right of way, and further than the width of the right of way was thirty feet wide at the point where the trees were cut.

The location and width of the turnpike at that point is vital. We cannot say as a conclusion of law that the traveled portion of an easement for road purposes is in the center of the right of way. Experience shows otherwise, and the traveled portion varies in location as the contour of the ground or the inclination of the traffic dictates.

In 1817, Virginia enacted a general law concerning turnpike companies, in which it was provided that the provisions of that act should be considered as a part of the charter of every turnpike company chartered under it. That act required that a turnpike should be "in every part thereof, sixty feet wide at least, eighteen feet of which shall be well covered with gravel or stone, where necessary, and at all times kept firm and smooth, free from mud holes, &c. * * *; and, on each side of the parts so to be made and preserved, they shall clear out a summer road eighteen feet wide, &c." Vol. 2 Revised Code of Virginia 1819, Chap. 234, Sec. 14. Tolls were allowed to be charged on each section of five miles. Provisions were made for the mode of ascertaining damages to the land owners, in case of disagreement.

On March 1, 1837, the general assembly of Virginia passed an act chartering the Giles, Fayette and Kanawha Turnpike Company for the purpose of constructing the turnpike in question, and provided that the company should not be required to make the "summer road" nor to cover the road with stone or gravel. It provided that the road should be *cleared* thirty feet wide and made suitable for wagons and other carriages for a space of fifteen feet. Acts of Virginia, 1836-7, Chap. 160. It will be observed that no change was made in the width of the turnpike as prescribed in the former act.

This turnpike was constructed and operated as a toll road by the chartered company. Whether the road through the lands now in question was condemned, or the right of way purchased or given by the landowners, does not appear. It must be presumed that the statute was complied with, in the absence of anything to the contrary. We do not say that the width of this road at the point in question is sixty feet. There

may have been deeds or other facts which have changed the width. If there have been, they do not appear in this case. No question of adverse possession arises here. It is not shown how long plaintiff had possession of his lands, or how long they were fenced in, if fenced. The burden is on the plaintiff to show that the trees were cut on his land to which he had a valid claim. We must presume, until it is. shown otherwise, that the width of the turnpike at this point is in accordance with the statute authorizing it. The burden of proof was on the plaintiff to prove to the satisfaction of the jury that the trespass claimed, was upon land to which he had valid right. The court so instructed the jury in defendant's instruction No. 1. There is ample authority for this proposition of law. *Holbrook* v. *McBride,* 4 Gray (Mass.) 215; *Williams* v. *Duston,* 111 Atl. (N. H.) 690; *Buck* v. *Newberry,* 55 W. Va. 681; *Adams* v. *Warner,* 204 N. Y. Supp. 613; and *Williams* v. *Brush Creek Coal Co.,* 148 S. W. (Ky.) 372. The burden always rests upon a plaintiff to make out his case by a preponderance of evidence.

It will obviously be unnecessary to pass upon the liability or non-liability of defendant under its claim of acting for and under the direction of the county authorities in cutting and removing the trees.

*Affirmed.*